**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**(ROME DIVISION)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BARTOW COUNTY,<br>135 WEST CHEROKEE AVENUE<br>CARTERSVILLE, GA 30120<br><br>Defendant. | Civil Action No._____<br><br><br>**JURY TRIAL**<br>**DEMANDED** |

## <u>COMPLAINT</u>

Plaintiff United States of America ("Plaintiff" or "United States") alleges:

1.      This action is brought on behalf of the United States to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII").  As set forth below, Bartow County ("Defendant" or "Bartow County") subjected Carlen Loyal ("Loyal") to a hostile work environment because of his race.  Bartow County also engaged in retaliation in violation of Title VII when it terminated Loyal and Bobby Turner ("Turner") because of Loyal's complaints about the racial harassment he experienced while employed by Defendant.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action under 42 U.S.C. §§ 2000e-5(f), 28 U.S.C. §§ 1331, 1343(a), and 1345.

3.      The employment practices at issue here were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Rome Division.  Therefore, venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b).

## PARTIES

4.      Plaintiff United States is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e- 5(f)(1) and (3).

5.      Defendant Bartow County is a government body created pursuant to the laws of the State of Georgia and is located within this judicial district at 135 West Cherokee Avenue, Cartersville, GA 30120.

6.      Defendant operates the Bartow County Road Department, located at 10 Ladds Mountain Road, Cartersville, GA 30120.

7.      Defendant is a person within the meaning of 42 U.S.C. § 2000e(a).

8.      Defendant is an employer within the meaning of Sections 701(b) of Title VII, 42 U.S.C. §§ 2000e(b).

## EEOC CHARGES

9.      On June 27, 2019, Loyal filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Bartow County engaged in race discrimination and retaliation against him in violation of Title VII.

10.     On August 26, 2019, Turner filed a timely charge of discrimination with the EEOC alleging that Bartow County engaged in race discrimination and retaliation against him in violation of Title VII.

11.     Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC investigated the charges of discrimination filed by Loyal and Turner.

12.     On June 19, 2020, the EEOC found reasonable cause that the County violated Title VII by subjecting Loyal to a hostile work environment, retaliating against Loyal for engaging in protected activity, and retaliating against Turner because of his familial association with Loyal, who had engaged in protected activity.

13.     On July 28, 2020, the EEOC notified Bartow County that efforts to conciliate Loyal and Turner's charges were unsuccessful, and the matter was forwarded to the Department of Justice.

14.     All pre-conditions to initiate this lawsuit have been fulfilled.

# FACTUAL ALLEGATIONS

## A.  Background

15.  The Bartow County Road Department is a County agency responsible for the maintenance and upkeep of the County's roads.  Among other services, the Road Department provides paving, sign and bridge installation and repair, and maintenance of all County vehicles and equipment.  The Road Department also is responsible for deploying personnel to clear road obstructions and repair traffic signs that have fallen down.

16.  As of September 2019, the Bartow County Road Department employed approximately 71 employees, only 3 of whom were African American.

17.  Carlen Loyal is African American.

18.  On or about September 16, 2009, Bartow County hired Loyal as a part-time temporary Laborer in the Road Department.

19.  On or about October 13, 2009, Bartow County promoted Loyal to a full-time Laborer in the Road Department.

20.  On or around March 29, 2010, Bartow County promoted Loyal to an Equipment Operator I in the Road Department.

21.  On or around November 7, 2011, Bartow County promoted Loyal to a Mechanic I in the Road Department.

22.     On or about February 15, 2016, Bartow County promoted Loyal to a Mechanic II in the Road Department.

23.     At all relevant times, Loyal performed his duties and responsibilities satisfactorily, was considered a "great worker" by his direct Supervisor Mark Boles, and was never disciplined by Bartow County.

24.     On June 27, 2019, Bartow County completed personnel paperwork for Loyal where his job performance was rated as "Satisfactory" and "Good."

25.     Bobby Turner is African American.

26.     In or about April 2016, Bartow County hired Turner as a part-time temporary Laborer in the Road Department.

27.     In or about September 2016, Bartow County promoted Turner to a full time Laborer in the Road Department.

28.     At all relevant times, Turner performed his duties and responsibilities satisfactorily and he was never disciplined by Bartow County.

29.     Loyal and Turner are brothers-in-law.  Turner is married to Loyal's sister.  Loyal and Turner have a very close relationship and consider themselves brothers.

**B.     Road Department and On-Call Duty**

30.     Road Department employees in certain job titles, including Mechanics

and Laborers, are periodically scheduled for on-call duty. Employees assigned to on-call duty are responsible for responding to road-related incidents or emergencies occurring outside of normal work hours in the evenings, overnight, or over the weekend.

31.     On-call duty is an additional responsibility assigned to Road Department employees beyond the job duties performed during their regular work hours.

32.     Defendant designated two employees for on-call duty each biweekly pay period.

33.     On-call employees can be notified of an emergency in several ways, including by a call from 911, a call from the other on-call employee, or a call directly from Road Department Director Joe Sutton.

34.     Defendant designated two on-call trucks for use by Road Department employees to travel to the site of road emergencies during on-call duty.  However, on-call employees were permitted to use vehicles other than the designated on-call trucks to respond to emergencies.  Road Department employees regularly used other trucks from the County's fleet to perform on-call duty.  This sometimes occurred because the designated on-call trucks did not contain all of the necessary tools required for the work.  Depending on the nature of the work being performed,

on-call employees had discretion to use specialized vehicles from the County's fleet to complete their duties.

35.    On-call employees automatically receive pay for four hours for the pay period when on-call, regardless of whether they are actually called to respond to an emergency.  When on-call employees respond to an emergency, they are also paid for whatever time is worked, from the time they receive the call until the time they return to their home.

36.    An on-call employee who responds to an emergency call has discretion to ask for additional assistance, either by contacting the other on-call employee or by asking another employee who is not scheduled for on-call duty for assistance.

37.    The additional employee who is called for assistance receives 3 hours of pay, plus whatever time is actually worked.

38.    At all relevant times, Road Department employees who were not scheduled to be on-call were regularly called for assistance, responded to such calls, and were paid for their work by Bartow County.

39.    Loyal and Turner were periodically scheduled for on-call duty throughout their employment with the Road Department and performed their duties satisfactorily.

40.     Road Department Director Joe Sutton regularly encouraged employees to contact Loyal or Turner while on-call if they needed additional assistance.  Sutton also encouraged employees who did not want to be on-call to ask Loyal to take their shift.

41.     While on-call Loyal periodically received calls directly from both current and former employees informing him of road emergencies.

42.     Prior to June 10, 2019, Loyal regularly called Turner for additional assistance while on-call.  Bartow County never objected to his doing so.

**C.      Carlen Loyal Complains of Racial Harassment and Discrimination.**

43.     On or about June 5, 2019, Loyal, who raises pigs when he is not working, sent a co-worker, Kirk Ledford, a recipe link for pig feed from his personal cell phone.

44.     Ledford is White.

45.     On June 6, 2019, Loyal received a text message response from Ledford which stated, "Nigger at work showed me this, I ain't tried it."

46.     Ledford was referring to Loyal with his use of the "n-word" in the text message.

47.     Loyal was shocked by the message and very upset.

48.     At all relevant times, Bartow County's personnel polices provided that

"Any employee who believes that he or she is or may be subject to discrimination or harassment, regardless of the identity of the alleged harasser, must report it immediately to the Bartow County Human Resources Department."

49.   On June 10, 2019, Loyal complained to Shop Supervisor, Mark Boles, about Ledford's racial slur in the text message.  Loyal asked for the County's assurance that he not have to work with Ledford in the future.

50.   On June 10, 2019, Mark Boles reported Loyal's complaint, including the content of the text message, to Joe Sutton and Sutton reported the complaint and information to the County's Human Resources Director, Robin Puryear, the same day.

51.   Later that day, Loyal was called into a meeting in Puryear's office. Present at the meeting were Puryear, Assistant Human Resources Director Marla Coggins, Sutton, and Ledford.  Loyal was not told in advance that Ledford would be present and everyone in the meeting, except Loyal, was White.

52.   Puryear immediately began defending Ledford and harassing Loyal, leading him to believe he had done something wrong by reporting the text message and that it had offended him.

53.   Puryear told Loyal that he had taken the message the wrong way and Ledford did not mean it, indicating that she did not believe Loyal's offense at the

message was warranted.

54.    Loyal objected to Puryear's assertion that he had taken the message the wrong way.

55.    Puryear responded by suggesting that Loyal should not be offended because he listened to rap music that uses the "n-word" and probably refers to his friends using the same term.

56.    Puryear continued to express disbelief as to why Loyal was offended and then proceeded to look up the "n-word" on her phone and read a definition aloud.  She then questioned Loyal, "You don't think this is you?"

57.    When Loyal did not respond, Puryear told Loyal, "Why didn't you just call him a cracker and be done with it?"

58.    Puryear continued harassing Loyal as to why the word offended him.

59.    Loyal responded that "we are all too old in this room to not know why this word is offensive."

60.    Loyal then asked to not have to work with Ledford in the future. Puryear told Loyal he would have to work with Ledford.

61.    Puryear then directed Loyal to shake Ledford's hand and "forgive and forget."

62.    Objecting to Puryear's response to his complaint and further

harassment of him because of his race, Loyal refused to shake Ledford's hand.

63.    Toward the end of the meeting, Puryear asked Loyal if he had told anyone else about Ledford's text message.  Loyal answered that the only person he told was his brother-in-law Bobby Turner.  Puryear responded, "I wish you hadn't done that."

64.    The meeting ended with Puryear, in the presence of Loyal, instructing Sutton to keep his eyes on Loyal and report back to Puryear on every move Loyal makes.  Puryear also suggested that Loyal might have "skeletons" of his own in his closet.

D.    **Immediately After Loyal's Complaint, Bartow County Investigates Loyal and Turner and Fires Them Two Weeks Later.**

65.    Loyal was scheduled for on-call duty during the weeks of June 10 and June 17, 2019.  During this period, in addition to his standard overtime of 4 hours for being on-call, Loyal submitted additional on-call time for responding to several road emergencies.  Loyal requested Turner's assistance on several of these calls, and Turner submitted time for the work he performed as well.

66.    The County investigated Loyal and Turner's submissions in retaliation for Loyal's discrimination complaint and opposition to Puryear's conduct during the June 10, 2019 meeting.

67.    Shortly after Loyal submitted his time sheets for the weeks of June 10

and June 17, Sutton contacted him and questioned him about several of the call-outs. Loyal explained the facts and circumstances for each of these call-outs to Sutton. Loyal also kept his own contemporaneous notes associated with his call-outs, which identify the times, locations, and nature of work performed. Prior to this time, Sutton had never questioned Loyal regarding any of his call-out submissions.

68.    Shortly after Turner submitted his time sheets for these time periods, he was also questioned by Joe Sutton and Assistant Road Department Director Mark Ledford about several of the call-outs. Turner explained the facts and circumstances for each of the call-outs to Sutton and Ledford. Prior to this time, Sutton had never questioned Turner regarding any of his call-out submissions.

69.    On or about June 19, 2019, nine days after Loyal's complaint, Loyal and Turner were called into a meeting with Puryear, Coggins, and Sutton. They were again questioned about the same June call-outs and offered similar explanations substantiating their work.

**E.    The County Terminates Loyal and Turner Two Weeks After Loyal's Complaint.**

70.    On June 25, 2019, approximately two weeks after Loyal reported discrimination, Loyal and Turner were each notified they were being terminated for alleged "discrepancies in dates, times and locations of call outs reported by

employee."

71.    The County's purported reason for Loyal and Turner's terminations was a pretext for retaliation.

72.    On information and belief, the County manufactured "evidence" to support terminating Loyal and Turner after-the-fact and only in response to the EEOC's investigation into the terminations.

73.    On information and belief, two non-African American Road Department employees, who had not engaged in protected activity, stole gravel from the County for personal use while working and were not terminated by the County.

74.    At the time of their terminations, Loyal and Turner were provided a Separation Agreement and General Release which required them to release any and all claims (including under Title VII of the Civil Rights Act) in exchange for the County agreeing not to civilly or criminally prosecute them for fraud.

75.    Fearing criminal prosecution, both Loyal and Turner executed the Separation Agreement and Release on July 2, 2019.

76.    Loyal and Turner received no real consideration in exchange for their execution of the Separation Agreement and Release.

77.    The Separation Agreements and Releases are therefore unenforceable.

Even if they were enforceable (which they are not), the United States is not bound by agreements between private parties.

78.   On information and belief, other County employees who separated from the County after alleged misconduct but had not engaged in protected activity were not threatened with criminal prosecution.

79.   Loyal has experienced significant pain and suffering, emotional distress, anxiety, stress, and loss of enjoyment of life caused by the discriminatory conduct of Defendant and its employees.

80.   Turner has experienced significant pain and suffering, emotional distress, anxiety, stress, and loss of enjoyment of life caused by the discriminatory conduct of Defendant and its employees.

81.   In November 2019, the County conducted an investigation of Puryear after a County firefighter raised a complaint of sexual harassment against her.  In that investigation, the County determined that Puryear's explanations were not "trustworthy or credible, and that her anger at [the Firefighter who complained] is inappropriate and puzzling as he had only followed training and policy, and therefore her view of herself as a 'wronged' victim did not make sense."  The County concluded that Puryear "was not being candid" and "there was a loss of trust."  Notwithstanding its findings, the County permitted Puryear to resign in lieu

of termination and paid her severance.

## COUNT I

### Title VII, 42 U.S.C. § 2000e-2(a)
### Hostile Work Environment – Race
### (On behalf of Loyal only)

82.     The United States re-alleges and incorporates herein by reference all of the foregoing allegations.

83.     As described in paragraphs 45 through 64, Loyal was subjected to race-based acts of harassment, humiliation, and intimidation in the workplace. These acts included receiving a text message from a co-worker in which the co-worker called Loyal the "n-word" and the treatment Loyal endured from Bartow County's Human Resources Director Robin Puryear during a meeting about the text message.

84.     Loyal made it known that the hostile work environment was unwelcome.  He complained to his supervisor about the text message from his co-worker and complained and objected to Puryear's racially hostile and discriminatory comments to him.  The harassment described in paragraphs 45 through 64 was severe and altered the conditions of his employment.  Loyal did find, and a reasonable person would have found, the conduct offensive.

85.     The County otherwise failed to exercise reasonable care to prevent or correct the hostile work environment.  The County's policies required Loyal to report complaints of discrimination to one of the harassers in this instance, Puryear, and Loyal attempted to follow the County's policies when he reported Ledford's text message.  It was reasonable, however, for Loyal not to report Puryear's own harassment to Puryear herself or to Sutton  witnessed it first-hand.  The County failed to take prompt corrective action to remedy any of the discriminatory and harassing conduct.

86.     For the foregoing reasons, the County discriminated against Loyal because of his race in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), among other ways, by:

        a.      Subjecting Loyal to harassment based on race, which created an intimidating, hostile, and/or offensive work environment that adversely affected the terms, conditions, and privileges of his employment; and

        b.      Failing or refusing to take reasonable or appropriate steps to promptly prevent or correct the harassment; and

        c.      Failing after actual or constructive knowledge of the harassment to take prompt and adequate action to stop it.

## COUNT II

### Title VII, 42 U.S.C. § 2000e-3(a)
### Retaliation
### (On Behalf of Loyal)

87.     The United States re-alleges and incorporates herein by reference all of the foregoing allegations.

88.     Loyal engaged in protected activity, when he complained about Ledford's racially discriminatory text to his Supervisor, participated in Bartow County's investigation of his complaint of race discrimination, and objected to Puryear's further harassment and response to his complaint.

89.     Shortly after Loyal's complaint about Ledford's text, Bartow County began engaging in a series of materially adverse actions against Loyal that would have dissuaded a reasonable person from complaining of discrimination.  Among other ways, as outlined in paragraphs 65 through 74, Bartow County increased its scrutiny of Loyal, began investigating his on-call time, and terminated him because of his complaint.

90.     Defendant took the aforementioned adverse actions against Loyal because of his protected activities.

91.     Defendant's purported reasons for its actions are pretext for retaliation.

92.     For the foregoing reasons, Defendant discriminated against Loyal in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

## COUNT III

**Title VII, 42 U.S.C. § 2000e-3(a)**
**Retaliation**
**(On Behalf of Turner)**

101.    The United States re-alleges and incorporates herein by reference all of the foregoing allegations.

102.    Loyal engaged in protected activity, when he complained about Ledford's racially discriminatory text to his Supervisor, participated in Bartow County's investigation of his race discrimination complaint, and objected to Puryear's further harassment and response to his complaint.

103.    Shortly after Loyal's complaint about Ledford's text, Bartow County began engaging in a series of materially adverse actions against Loyal's brother-in-law, Turner, that would have dissuaded a reasonable person from complaining of discrimination.  Among other ways, as outlined in paragraphs 65 through 74, Bartow County increased its scrutiny of Turner, began investigating his call-out time, and terminated him because of his brother-in-law Loyal's  complaint.

104.    Bartow County was aware of the extremely close personal and familial relationship between Loyal and Turner.

105.   Defendant took the aforementioned adverse actions against Turner because of Loyal's protected activities.

106.   Defendant's purported reasons for its actions are pretext for retaliation.

107.   For the foregoing reasons, Defendant discriminated against Turner in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

## **PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court grant the following relief:

A.   Award all appropriate monetary relief, including lost wages where applicable, to Carlen Loyal and Bobby Turner in an amount to be determined at trial to make them whole for any loss suffered as a result of the retaliation alleged in this complaint.

B.   Reinstate Carlen Loyal and Bobby Turner, or award lost wages if reinstatement is not feasible.

C.   Award Carlen Loyal and Bobby Turner any prejudgment interest on the amount of lost wages and benefits determined to be due.

D.   Award compensatory damages to Carlen Loyal and Bobby Turner to fully compensate them for the pain and suffering caused by Defendant's actions as alleged in this complaint, pursuant to and within the statutory limitations of Section

102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

E.   Enjoin Defendant from further harassment and retaliation against Carlen Loyal and Bobby Turner.

F.   Order Defendant to develop and implement appropriate and effective measures to prevent harassment and retaliation, including, but not limited to: (1) instituting effective anti-harassment and retaliation policies and procedures; (2) distributing its anti-harassment and retaliation policies to all employees; (3) implementing appropriate anti-harassment and retaliation training to all employees and officials; (4) providing mandatory anti-harassment and retaliation training for all supervisors and employees.

G.   Order any further relief necessary to make Loyal and Turner whole.

H.   Award such additional relief as justice may require, together with the United States' cost and disbursements in this action.

## **JURY DEMAND**

The United States hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Dated:  October 13, 2022

Respectfully submitted,

RYAN K. BUCHANAN
United States Attorney
Northern District of Georgia

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

AILEEN BELLHUGHES
Georgia Bar No. 375505
Assistant United States Attorney

KAREN D. WOODARD
Chief
Employment Litigation Section
Civil Rights Division

TRISHANDA L. TREADWELL
Georgia Bar No. 356896
Assistant United States Attorney
600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
(404) 581-6000
Aileen.bell.hughes@usdoj.gov
Trish.treadwell@usdoj.gov

MEREDITH L. BURRELL
Principal Deputy Chief
Employment Litigation Section
Civil Rights Division

*/s/ Jeremy P. Monteiro*
JEREMY P. MONTEIRO
DC Bar No. 977628
Attorney for United States of America
Senior Trial Attorney
United States Department of Justice
Employment Litigation Section
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC  20530
Telephone: (202) 307-6203
Email: jeremy.monteiro@usdoj.gov

Attorneys for Plaintiff United States of America